FILED
12/21/2021
Clerk of the
Appellate Courts

THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
May 18, 2021 Session

## ROHMAN M. HARPER v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Cheatham County
No. 16363   Larry J. Wallace, Judge**

---

### No. M2020-00567-CCA-R3-PC

---

The Petitioner, Rohman M. Harper, appeals from the Cheatham County Circuit Court's denial of his petition for post-conviction relief from his aggravated sexual battery conviction and his eight-year sentence. On appeal, the Petitioner contends that the post-conviction court erred by denying relief on his ineffective assistance of counsel claim. We affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT H. MONTGOMERY, JR., J., delivered the opinion of the court, in which NORMA MCGEE OGLE and TIMOTHY L. EASTER, JJ., joined.

Andrew E. Mills, Dickson, Tennessee, for the appellant, Rohman M. Harper.

Herbert H. Slatery III, Attorney General and Reporter; Caitlin Smith, Senior Assistant Attorney General; Ray Crouch, District Attorney General; Robert S. Wilson, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

In August 2011, the Petitioner was indicted for aggravated sexual battery, resisting arrest, and public intoxication. He pleaded guilty to resisting arrest and to public intoxication, and he was convicted of aggravated sexual battery of the six-year-old victim at a trial.

The trial evidence showed that on April 14, 2011, the Defendant placed his hands inside the pants of the victim, touching the victim's private area. The victim yelled for help, and the Defendant told the victim not to tell anyone about the touching. At the time of the offenses, the Defendant rented a room in James Tindall's home. Mr. Tindall recalled that the Defendant was not "normal" on the day of the offense and smelled of alcohol. Mr.

Tindall later saw the Defendant and victim together, and Mr. Tindall asked his wife to check on them because he thought the Defendant might have been doing something improper. Ms. Tindall walked up behind the Defendant and saw the Defendant's hand inside the victim's pants. Afterward, the Defendant ran around the home, and he was found by a police dog hiding in the leaves in the backyard. The Defendant smelled of alcohol, had glassy eyes, slurred speech, and difficulty standing at the time of his arrest. *State v. Rohman M. Harper*, No. M2014-00944-CCA-R3-CD, 2014 WL 6900926, at *1-5 (Tenn. Crim. App. Dec. 9, 2014), *perm. app. denied* (Tenn. Feb. 12, 2015).

The Defendant testified that he drank at least one-half of a bottle of whiskey on the day of the offenses. He said that he did not recall any of the events to which the State's witnesses testified and said that he became confused about what was happening, walked about thirty feet away from the home, and "passed out." When asked whether the Defendant touched the victim, the Defendant stated, " I don't remember that taking place." He stated, though, it was possible he had touched victim, but he would not believe it. The Defendant denied being attracted to juveniles and said he did not think he would have touched the victim. He denied touching anyone for sexual gratification but conceded he did not know any reason someone would put their hands inside a six-year-old boy's pants unless it was for sexual gratification. *Rohman M. Harper*, 2014 WL 6900926, at *5-6.

On January 28, 2016, the Petitioner filed a timely pro se petition for post-conviction relief, and an amended petition was filed by post-conviction counsel. After evidentiary hearings, the post-conviction court denied relief. The sole issue raised on appeal is whether the post-conviction court erred by denying relief on the Petitioner's allegation that trial counsel provided ineffective assistance by failing to obtain an expert in the field of psychosexual evaluations and to call the expert as a defense witness. Our recitation of the evidence at the post-conviction hearing is limited to this issue.

At the post-conviction hearing, Dr. James Walker, Ph.D., an expert in neuropsychology and psychology, testified that he was a licensed psychologist in Tennessee and in Alabama and that he was a licensed clinical psychologist in Kentucky. On July 23, 2013, Dr. Walker performed the Petitioner's psychological and psychosexual evaluation, and the report was received as an exhibit.[1]

Dr. Walker testified that the Petitioner, who was age thirty at the time of the offense, showed no indication of attempting to malinger or to exaggerate his problems during the evaluation. Dr. Walker said that the Petitioner, likewise, showed no signs of having difficulty with basic mental abilities and social reasoning abilities. Dr. Walker said that the Petitioner tended to be shy, reclusive, anxious, and avoidant and that the Petitioner had

---

[1] Other evidence showed that the evaluation occurred after the conclusion of the trial but before the sentencing hearing.

-2-

difficulty with relationships because he did not "stand up" for himself "like he ought to at times." Dr. Walker said that the Petitioner demonstrated a "profoundly conservative attitude towards sex" and did not show any "compulsive sexual characteristic to his sexual practice." Dr. Walker said that the Petitioner showed "sexual interest" in adult and adolescent females, which Dr. Walker concluded was "perfectly normal . . . for a man in our society." Dr. Walker said that it was "normal for a man to be attracted to a female who ha[d] developed sexual characteristics" and that "most men . . . register[ed] as being interested in both adolescent and adult females." Dr. Walker concluded that the Petitioner was not attracted to men, underage individuals, school-aged children, or younger children. Dr. Walker stated that the Petitioner had "relatively few" recidivism risk factors, which included that the Petitioner had never lived with a woman for more than two years and that the victim was male.

Dr. Walker testified that the Petitioner had "a very serious [alcohol] problem," based upon the Petitioner's long history of heavy drinking. The Petitioner reported that he had undergone substance abuse treatment while serving in the military, that he had two driving under the influence convictions, and that the present offense "occurred in the context of severe intoxication." Dr. Walker concluded that the Petitioner was a "classic alcoholic" and needed treatment and said that the Petitioner had been "open and honest" during the evaluation. Dr. Walker stated that the Petitioner did not show any indication of a "sustained attempt to mislead." Dr. Walker concluded that the Petitioner did not have an attraction to children or homosexual interests.

On cross-examination, Dr. Walker testified that although the Petitioner testified at the trial that he had suffered an alcoholic "blackout" during the incident, the Petitioner reported during the evaluation that his memory had not been impaired. Dr. Walker agreed that although the Petitioner "did this while he was under the influence of alcohol," the Petitioner did not have a "permanent predilection to do this to young kids."

On redirect examination, Dr. Walker agreed that the Petitioner's trial testimony that he did not believe the incident happened was consistent with his statements during the evaluation. Dr. Walker likewise agreed the Petitioner's trial testimony that he "blacked out after all that happened" was consistent with the Petitioner's statement during the evaluation that he remembered what occurred.

Upon examination by the post-conviction court, Dr. Walker testified that, without regard for societal norms and criminality, scientific studies showed it was normal for a man to be "interested in adolescent females" and explained that it was normal for an adult man to be sexually attracted to "developed sexual characteristics: breasts, larger bottom, . . . the things that happen to a woman when she goes through puberty around the age of 13, 14, or 15." Dr. Walker defined an adolescent female as a girl who had completed puberty and had developed the physical characteristics of a young woman.

Trial counsel testified that he represented the Petitioner at the trial and at the sentencing hearing. Counsel stated that he did not present testimony to rebut the State's trial evidence. When asked if counsel considered having the Petitioner undergo a psychosexual evaluation, counsel said he probably considered it but did not pursue an evaluation based upon the facts of the case. Counsel did not recall if the Petitioner asked about an evaluation. Counsel said that he would not have utilized a psychosexual analysis showing that the Petitioner did not have a sexual attraction toward children or men to rebut the State's proof in a Cheatham County trial. Counsel explained that he had tried jury cases in Cheatham County for "forever" and that jurors did not care about anybody's sexual interest if the jurors believed a defendant placed the defendant's hands "down the pants of a little boy." Counsel said that he knew Cheatham County jurors and that the evaluation "would not have mattered at all."

Trial counsel testified that he should have done a better job convincing the Petitioner not to testify at the trial. Counsel believed, based upon his discussions with a couple of jurors after the trial, that the trial would have resulted in a hung jury if the Petitioner had not testified. Counsel recalled that this court relied, in part, upon the Petitioner's testimony in holding that the evidence was sufficient to support the conviction.

On cross-examination, trial counsel testified that he had "difficulty" with the Petitioner and acknowledged the Petitioner identified himself as a "sovereign citizen." Counsel said that this case was about the facts and attempting to get one juror to have reasonable doubt. He said that he did not address the report from Our Kids at the trial because the report reflected that the victim stated that there was "nasty stuff" on the Petitioner's phone and that the Petitioner touched the victim's private areas, which were defined as the penile area and buttocks.

On redirect examination, trial counsel agreed that an examination of the Petitioner's cell phone did not reveal the presence of child pornography but that counsel did not present this evidence at the trial. Counsel said pornography was not mentioned at the trial. Counsel agreed that a psychosexual evaluation reflecting that the Petitioner did not have a sexual attraction toward children and men might have convinced the Petitioner not to testify at the trial because the Petitioner wanted to show the jury "he didn't do it, that he didn't want to do it, that he got no sexual gratification from it."

Upon examination by the post-conviction court, trial counsel testified he had never pursued a psychosexual assessment to present at a trial. Counsel said that he was unsure if such a report would have been admissible. He said that if an evaluation were performed before a trial, the State would be entitled to the report pursuant to the rules of discovery. Counsel said that in his experience, which included 417 criminal trials, a psychosexual evaluation was "rarely" favorable to a defendant, which was the reason counsel did not "do

that ahead of time because of reciprocal discovery." Counsel stated that in hindsight he might have had the Petitioner's competency assessed.

On recross-examination, trial counsel testified that the State recommended the minimum sentence of eight years with concurrent service of the two misdemeanor sentences. Counsel said that, as a result, there was not "any real need" for a sentencing hearing.

The Petitioner testified that he underwent a psychosexual evaluation after the trial but that the evaluation was not conducted at trial counsel's direction. The Petitioner said he initiated the evaluation between the trial and the sentencing hearing and provided the report to counsel, who did not submit it to the trial court at sentencing. The Petitioner said he "wish[ed]" counsel had obtained a psychosexual evaluation before the trial.

On cross-examination, the Petitioner testified that he hired another attorney to assist with obtaining the psychosexual evaluation, which occurred in July 2013. Relative to whether the Petitioner suffered a blackout at the time of the incident, the Petitioner stated that he told the "same story all the way along, that [he] remembered everything up until right before the police arrested [him]." The Petitioner agreed that at the trial he testified that he "could have done it" but that he did not remember. The Petitioner stated that trial counsel advised him not to testify but that the decision belonged to him.

The post-conviction court took the matter under advisement at the conclusion of the September 12, 2017 hearing, but before the court entered an order adjudicating the petition for relief, the State filed a motion to reopen the evidentiary hearing. The State asserted that it had learned of impeachment evidence in connection with Dr. Walker, that the State had not been informed of the expert witness's testimony before the evidentiary hearing, and that the State had not been informed Dr. Walker's psychosexual evaluation report would be presented as evidence.

The record reflects that although the post-conviction court ultimately denied the State's motion to reopen the evidentiary hearing on the basis of mootness, the court allowed the State to present an offer of proof. On April 11, 2019, Dr. Walker was recalled and testified that in 2013, he entered into a consent agreement with the Tennessee Board of Psychology in which he agreed not to use any "illegal drugs" but that on September 22, 2017, he suffered a relapse when he used heroin and cocaine. He said that as a result, his license was suspended for one year. His suspension was to end in January 2020. He stated his license was not suspended in Kentucky and that he "withdrew" his license in Alabama "years ago."

Dr. Walker testified that he did not previously testify that all adult males were aroused by prepubescent girls. Dr. Walker said that such a statement would mean that adult males were aroused by school-aged females, which was not accurate. He said that his previous testimony, in this case and in others, was that it was "normal for adult males to be [aroused] by sexually developed adolescent females who may or may not be above or below the age of 17." He said "it's postpubescent" females, not prepubescent females, and that this included females ages fifteen to seventeen who have "sexually developed."

Dr. Walker testified that his license was in good standing when he evaluated the Petitioner in 2013 and that he assumed the Petitioner's guilt at the time of the evaluation. Dr. Walker stated that the test resulting in his conclusion that the Petitioner was not attracted to males, young and old, involved showing the Petitioner photographs and measuring his arousal with the assistance of a computer based upon the length of time the Petitioner looked at each photograph. Dr. Walker said that the computerized results were consistent with the Petitioner's admissions relative to which photographs the Petitioner found sexually appealing, which included sexually developed females. Dr. Walker said that the results showed that the Petitioner had "no sexual arousal connected" with the photographs depicting males. Dr. Walker said that he had been trained by the creator of the test and that he had administered the test nearly 1000 times during his twenty-seven-year career. Dr. Walker said that "sexually, [the Petitioner] shows up as perfectly normal" and that "whatever the reason" for the Petitioner's conduct in the present case, "it didn't happen because he's a pedophile" or because "he has a sexual interest in having sex with children."

On March 5, 2020, the post-conviction court entered an order denying relief. The court found, in relevant part, that trial counsel believed that a psychosexual evaluation would not have benefited the defense, that an evaluation was rarely favorable to the defense, and that the State would have access to any report. The court determined, though, that pursuant to *State v. Campbell*, 904 S.W.2d 608 (Tenn. Crim. App. 1995), that Dr. Walker's testimony regarding the Petitioner's "propensity to commit crimes involving the sexual abuse of children" was inadmissible.[2] The court determined that Dr. Walker's

---

[2] In *State v. Campbell*, the defendant was convicted of aggravated sexual battery. 904 S.W.2d at 610. At the trial, the defense sought to call as a defense witness a psychologist, who evaluated the defendant and who concluded that the defendant's "profile is unlike those individuals who are admitted sex offenders or abusers of any type" and that the defendant's responses during the evaluation were "completely within the normal range." *Id.* at 616. The defense sought the admission of the testimony for the purpose of showing that the defendant did not have "'the propensity' to commit crimes involving the sexual abuse of children." *Id.* The trial court excluded the evidence, and this court concluded that "whether the [defendant] had a 'propensity' or predisposition to sexually abuse children was irrelevant" because the jury was tasked with determining whether the victim or the defendant was the most credible witness regarding the allegation. *Id.* As a result, this court determined that the psychologist's testimony would not have substantially assisted the jury in this regard. *Id.*

-6-

testimony would not have substantially assisted the jury and that, as a result, the Petitioner failed to establish counsel provided deficient performance resulting in prejudice. However, the court determined that Dr. Walker's testimony would have been admissible at the sentencing hearing but that the Petitioner failed to establish prejudice because the Petitioner received the minimum sentence. This appeal followed.

The Petitioner contends that the post-conviction court erred by denying relief on his allegation that trial counsel provided ineffective assistance by failing to obtain an expert to conduct a psychosexual evaluation and to call the expert as a trial witness. He asserts that if counsel had presented Dr. Walker at the trial, a reasonable probability existed that the jury would have reached a different conclusion. The State responds that the court did not err by denying relief.

Post-conviction relief is available "when the conviction or sentence is void or voidable because of the abridgement of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103 (2018). A petitioner has the burden of proving his factual allegations by clear and convincing evidence. *Id.* § 40-30-110(f) (2018). A post-conviction court's findings of fact are binding on appeal, and this court must defer to them "unless the evidence in the record preponderates against those findings." *Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997); *see Fields v. State*, 40 S.W.3d 450, 456-57 (Tenn. 2001). A post-conviction court's application of law to its factual findings is subject to a de novo standard of review without a presumption of correctness. *Fields*, 40 S.W.3d at 457-58.

To establish a post-conviction claim of the ineffective assistance of counsel in violation of the Sixth Amendment, a petitioner has the burden of proving that (1) counsel's performance was deficient and (2) the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see Lockhart v. Fretwell*, 506 U.S. 364, 368-72 (1993). The Tennessee Supreme Court has applied the *Strickland* standard to an accused's right to counsel under article I, section 9 of the Tennessee Constitution. *See State v. Melson*, 772 S.W.2d 417, 419 n.2 (Tenn. 1989).

A petitioner must satisfy both prongs of the *Strickland* test in order to prevail in an ineffective assistance of counsel claim. *Henley*, 960 S.W.2d at 580. "[F]ailure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim." *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996). To establish the performance prong, a petitioner must show that "the advice given, or the services rendered . . . are [not] within the range of competence demanded of attorneys in criminal cases." *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975); *see Strickland*, 466 U.S. at 690. The post-conviction court must determine if these acts or omissions, viewed in light of all of the circumstances, fell "outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. A petitioner "is not entitled to the benefit of hindsight, may

not second-guess a reasonably based trial strategy by his counsel, and cannot criticize a sound, but unsuccessful, tactical decision." *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994); *see Pylant v. State*, 263 S.W.3d 854, 874 (Tenn. 2008). This deference, however, only applies "if the choices are informed . . . based upon adequate preparation." *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992). To establish the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

The record reflects that, as a matter of general practice, trial counsel never obtained psychosexual evaluations before a trial because the conclusions rarely favored the defense and because counsel knew that if he intended to introduce a report at the trial, reciprocal discovery would have required counsel to provide an unfavorable report to the State. *See* Tenn. R. Crim. P. 16(b). Counsel said that even if he had obtained an expert who would have concluded that the Petitioner did not have "sexual proclivities toward children or men," counsel would have never presented the report to a Cheatham County jury. Counsel had extensive experience trying cases in the jurisdiction and had concluded, based on his experience of more than 400 jury trials, that jurors did not care about "anybody's proclivity" if jurors believed a defendant had placed his hands "down the pants of a little boy." As a result, the record reflects that counsel made a reasonable tactical decision. *See Adkins*, 911 S.W.2d at 347; *Cooper*, 847 S.W.2d at 528.

Furthermore, the evidence of the Petitioner's guilt was overwhelming based upon witness testimony that the Petitioner was seen with his hands inside the victim's pants. The evidence likewise showed that the Petitioner told the victim not to report the touching, ran from the scene, and hid in the surrounding area; that the Petitioner admitted it was possible he touched the victim; and that the Petitioner did not know any reason for touching the victim unless it was for sexual gratification. *See Rohman M. Harper*, 2014 WL 6900926, at *7. As a result, the record supports the post-conviction court's determination that the Petitioner failed to establish trial counsel provided deficient performance resulting in prejudice. The post-conviction court did not err by denying relief.

Although the post-conviction court denied relief on the basis that Dr. Walker's testimony would have been inadmissible evidence of the Petitioner's propensity to commit a crime involving the sexual abuse of children, the record reflects that trial counsel made an informed, strategic decision not to obtain a psychosexual report before the trial. Counsel's decision is afforded deference, and the Petitioner is not permitted to second guess this sound and informed trial strategy. The Petitioner is not entitled to relief.

-8-

In consideration of the foregoing and the record as a whole, the judgment of the post-conviction court is affirmed.

_____

ROBERT H. MONTGOMERY, JR., JUDGE